## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| CAREY & ASSOCIATES, P.A., GEORGE SHAW, Both Class representatives, individually and on behalf of all others similarly situated<br><br>PLAINTIFFS<br><br>V.<br><br>SHERIFFS & COUNTIES OF: OXFORD COUNTY, CUMBERLAND COUNTY, AROOSTOOK COUNTY, HANCOCK COUNTY, KENNEBEC COUNTY, KNOX COUNTY, LINCOLN COUNTY, PENOBSCOT COUNTY, SAGADAHOC COUNTY, SOMERSET COUNTY, WALDO COUNTY, YORK COUNTY, ANDROSCOGGIN COUNTY, FRANKLIN COUNTY, PISCATAQUIS COUNTY, WASHINGTON COUNTY, For the actions and inactions of their sheriff's departments and county commissioners.<br><br>DEFENDANTS | CIVIL ACTION NO.: |

**NOW COMES** the Plaintiff, **CAREY & ASSOCIATES, P.A.** (hereinafter "Plaintiffs," "Class," or "Antitrust Class"), individually and on behalf of other consumers similarly situated, by and through its attorney, **Seth T. Carey,** and complains of Defendant Maine counties, and all sheriff's departments that serve civil papers and their county commissioners in the State of Maine, moves for damages and restitution on behalf of the Class, injunctive relief and hereby states as follows:

1

## I. COMPLAINT

<u>Introduction</u>

1.      Antitrust laws have been enforced in Maine and in the United States on the federal level since the 1890's. These laws are designed to protect and encourage open competition between businesses and ultimately to protect consumers. Free and fair competition lies at the heart of our economic and political system. Modeled on federal statutory provisions, Maine antitrust laws prohibit:

A. Contracts, combinations or conspiracies in restraint of trade, (10 M.R.S.A. § 1101 (1997));

B. Monopolization offenses, (10 M.R.S.A. § 1102 (1997);

C. Mergers and acquisitions which tend to substantially reduce competition (5 M.R.S.A. § 207 (2002)); and

D. Unfair methods of competition, as well as unfair acts and practices in the conduct of trade or commerce, (10 M.R.S.A. § 1102-A (1997));

Competition provides a powerful incentive for businesses to find ways to increase efficiency, lower prices and improve the quality of their products or services. Businesses which can offer the highest quality product or service at the lowest prices will thrive in a competitive environment. The ultimate beneficiary of enhanced quality at a reduced price is, of course, the consuming public. In a healthy competitive marketplace, consumers have the widest choice of products and services at the lowest prices. When businesses restrict competition by agreeing to fix prices, allocating markets, merging to monopoly, abusing monopoly power or engaging in other anticompetitive activity, the benefits of competition (lower prices and increased quality of products and services) are eroded and, ultimately, disappear.

2.      The Federal Trade Commission Act "was designed to supplement and bolster the Sherman Act and the Clayton Act … to stop in their incipiency acts and practices which, when full blown, would violate those Acts … as well as to

2

condemn as 'unfair methods of competition' existing violations" of those acts and practices.  Examples of conduct that fall within the scope of Sherman Antitrust Act, Section 5 include deceptive, collusive, coercive, predatory, unethical, or exclusionary conduct or any course of conduct that causes actual or incipient harm to competition. Moreover, where a Defendant that has monopoly power, F.T.C. v. Brown Shoe Co., 384 U.S. 316, 322 (1966) (quoting F.T.C. v. Motion Picture Adv. Serv. Co., 344 U.S. 392, 394-95 (1953)).

3.     Defendants have engaged, and continue to engage, in a course of conduct tending to cripple rivals or prevent would-be rivals from constraining its exercise of providing an alternative for civil service, and such conduct cumulatively or individually has anticompetitive effects or has a tendency to lead to such effects, that course of conduct falls within the scope of Section 5 of the Sherman Antitrust Act.

**NATURE OF THE CASE**

4.     This consumer class action is brought by Plaintiffs, individually and on behalf of a putative statewide class in Maine, (hereinafter "the Class"), under both state and federal law for monetary, declaratory and injunctive relief, and to recover as restitution, civil service of process fee payments and overpayments made from at least the year 2000 (or the lengthiest time period allowed by this court through the present (hereinafter the "relevant time period")), as a result of Defendants' unlawful scheme involving the exorbitant and unconscionable service fees that include the non-pro rating of mileage for service of civil service papers by its deputies.

5.     Also, Class members set forth a claim for violation of Maine Freedom of Information and Access laws by certain Defendants not complying with the provisions of those laws when sent proper requests for information under those laws in proper form and did not receive a reply.

6.     There is no legitimate, lawful reason for these price-gouging fraudulent practices; the victims are in the thousands, and very few users of the civil

justice process seem to have been spared the Defendants' unlawful and predatory scheme to defraud these innocent victims.

7.     For years, civilian lay persons were able to serve process for plaintiffs and their attorneys across the state of Maine.

8.     In the last decade, likely as a result of the sheriffs' lobbying efforts to gain more power and make their departments more money, county sheriffs were able to eliminate the advent of lay person service, (which was often a retired or semi-retired senior former sheriff deputy) securing a monopoly for service of process for the sheriffs.

9.     It is troubling that the defendant sheriffs, after gaining such monopoly, sought to fraudulently garner more money by over-charging and gouging the citizen tax payers of their respective counties that ironically were already paying their salaries and costs.

10.    Somehow the county commissioners seem to have been "asleep at the wheel" when they allowed these several sheriff departments to price-gouge the tax payers of their counties after giving the departments hundreds of thousands of dollars or more for their budgets.

11.    Moreover, charging for civil service is an anomaly in the scheme of county sheriff or frankly any county civil servant capacity.

12.     For instance, when the police investigate a crime, the district attorney charges someone with a crime or the fire department fights a fire, they do not then send the person that needed the help a bill.

13.    Contrastingly, in the instant case, not only do the defendant sheriffs have a monopoly and charge in some respects whatever they want in this non-free market; they price-gouge the citizen plaintiffs who have been damaged already, by double-charging for mileage.

14.    Despite the fact that these plaintiff victims did not ask to be emotionally, physically or financially damaged, and in many cases, have been badly injured; they surely do not deserve to be essentially "kicked when they are down" by the sheriffs that they elected to "protect and serve."

15.    In essence, the criminals who have done heinous crimes, (and may even be the defendants who the plaintiffs are suing and who are being served the complaint by the sheriffs' deputies here) have to pay nothing financially for their crimes, while the victim tax-paying plaintiffs are double-charged and price-gouged.  There is something wrong with this situation.

16.    The outrageous, unconscionable and immoral double and non-pro-rata charging by Defendants is nothing more than price gouging.

17.    The consumer Class has likely been unlawfully price-gouged in the millions of dollars in the last decade.

18.    For the injuries that Plaintiffs' Class Members have sustained and continue to sustain as a result of Defendants' violation of those duties, the Plaintiffs seek consideration given, damages, restitution, treble damages or three times consideration given by consumers of civil service, disgorgement, other monetary relief, injunctive and other equitable relief under federal antitrust laws and Maine's antitrust, consumer protection, unfair trade practices, and unjust enrichment laws, as well as costs of suit, including reasonable attorneys' fees.

19.    This action is filed by Attorney Seth T. Carey under the provisions of the Maine Unfair Trade Practices Act, the Sherman Act, and the Clayton Act, *et als.* on behalf of all aggrieved consumers of civil service fees in Maine.

20.    For the injuries that Plaintiffs have sustained and continue to sustain as a result of Defendants' violation of those laws, Plaintiffs seek consideration, damages, restitution, treble damages or three times consideration given by consumers of civil service in Maine, disgorgement, other monetary relief, injunctive and other equitable relief under federal antitrust laws and Maine's antitrust, consumer protection, unfair trade practices, and unjust enrichment laws, as well as costs of suit, including reasonable attorneys' fees.

**JURISDICTION AND VENUE**

21. This Court has personal jurisdiction over the Defendants in this matter and subject matter jurisdiction over the allegations in the Complaint, derived both of state and federal law.  Specifically, a Federal Question exists under  28 U.S. Code § 1331, in regards to the antitrust laws that the Defendants have violated.

22.    This Court has personal jurisdiction over Defendants because, *inter alia*, they: (a) transacted business throughout Maine; (b) had and have substantial contacts with the consumers and citizens of their respective counties; and (c) were engaged in an illegal anticompetitive scheme that was directed at and had the intended effect of causing injury to persons residing in, located in, or doing business throughout the state of Maine.

23. Venue is proper because Defendants reside, are found, have agents, and transact business in this state as provided in 28 U.S.C. § 1391(b) and (c) and in Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22.

**THE PARTIES**

24.    Plaintiffs are individuals, businesses and law firms and presently all residents or having a business in the State of Maine that have been overcharged and price-gouged by Defendants and those that lost their employment as civil process servers due to Defendants' monopolistic actions. Also, it is quite possible that there will be Class Members outside this state since Defendants apparently did not discriminate just against those intrastate in their price-gouging scheme: rather they cheated individuals and businesses with equal disparagement.

25.    Current Class Representative Law Firm Plaintiff, Carey & Associates, P.A. is a professional association law firm owned by Thomas S. Carey, Esq. who has worked or owned such firm at 114 Congress St. in Rumford, Maine for over 4 decades. Carey & Associates, P.A. has had perhaps hundreds of civil clients in many Maine counties that have been price-gouged by Defendants.  Class Representative George Shaw is a resident of Rumford, Maine, a client of Carey

Law, owned by Seth T. Carey, Esq. in Rumford, Maine and was price-gouged by the Defendant Oxford County Sheriff's Department.

26.    Plaintiffs, through the requisite Maine Torts Claims Act notice of claim provided Defendants with a preliminary list of individuals and law firms that have been injured by Defendants' tortious actions.  All current and impending Plaintiff class members, during the relevant time period, purchased civil service measures from one or more of the Defendant sheriff departments.

27.    As a result, Plaintiffs, like other members of the Class, suffered damages from the unlawful scheme and exorbitant price gouging of the same by Defendants, which damages resulted from them being forced to pay the exorbitant prices for service for this monopolistic service.

28.    Defendant sheriff departments and county commissioners are semi-autonomous divisions located in each county with jurisdiction in criminal and civil matters to the extent of service of papers by Plaintiffs in need of civil service within and without the state of Maine.

29.    Defendants in recent years have displaced non-sheriff's deputies that made their living from serving papers.  Now sheriff's departments serve most civil documents exclusive from other servers, creating an illegal monopoly.

30.    Defendants' actions, as a whole since they have gained such monopoly have demonstrated first-hand why monopolies are outlawed in our free-market democratic system and proven the axiom that "absolute power corrupts absolutely."

**FACTUAL ALLEGATIONS**

**A. Defendants Unlawful Monopoly and Intentional Scheme to Operate a Corrupt Coercive Monopoly, Profiteering, Price-Gouging and Price-Fixing Organization.**

31.     This Consumer Class consists of Individuals, Businesses, and Attorneys and Plaintiffs across the state of Maine and beyond that were overcharged and "price-gouged" by the above-listed tortfeasor county sheriffs.

32.    There is no legitimate, lawful reason for the Defendant sheriffs' price-gouging fraudulent practice and it constitutes an illegal coercive monopoly and profiteering scheme.

33.    For years, civilian lay persons were able to serve process for plaintiffs and their attorneys across the state of Maine.

34.    In the last decade, likely as a result of the sheriffs' lobbying efforts to gain more power and make their departments more money, county sheriffs were able to eliminate the advent of lay person service, (which was often a retired or semi-retired senior former sheriff deputy) securing a monopoly for service of process for the sheriffs.

35.    It is troubling that the defendant sheriffs, after gaining such monopoly, sought to fraudulently garner more money by over-charging and gouging the citizen tax payers of their respective counties that ironically were already paying their salaries and costs.

36.    Somehow the Defendant county commissioners seem to have been "asleep at the wheel" when they allowed these several sheriff departments to price-gouge the tax payers of their counties after giving the departments hundreds of thousands of dollars or more for their budgets.


**B. For Defendant Sheriffs and County Commissioners to Profit from the Service of Civil Papers, (While the *Taxpayers* Pay for Defendants' Work on Criminal Cases) in "Legal. What Defendants have done: Fraudulently Profiteering, Organizing a Coercive Monopoly, Price-Gouge Innocent, Hard-Working Taxpaying Citizen Victims, in not.**

37.    Charging for civil service of court papers is an anomaly in the scheme of county sheriffs or frankly any county civil servant capacity.

38.    For instance, when the police investigate a crime, the district attorney charges someone with a crime or the fire department fights a fire, they do not then send the person that needed the help a bill.

39.    Contrastingly, in the instant case, not only do the defendant sheriffs have a monopoly and charge in some respects whatever they want in this non-

8

free market; they price-gouge the citizen plaintiffs who have been damaged already, by double-charging for mileage.

40.    Despite the fact that these plaintiff victims did not ask to be emotionally, physically or financially damaged, and in many cases have been badly injured; they surely do not deserve to be essentially "kicked when they are down" by the sheriffs that they elected to "protect and serve."

41.    In essence, the criminals who have done heinous crimes, (and may even be the defendants who the plaintiffs are suing and who are being served the complaint by the sheriffs' deputies here) have to pay nothing financially for their crimes, while the victim tax-paying plaintiffs are double-charged and price-gouged.  There is something wrong with this situation.

42.    The outrageous, unconscionable and immoral double and non-pro-rata charging by Defendants is nothing more than price gouging.


**C.  The Majority of Defendant Sheriffs Direct Their Deputies to Charge Mileage from The Sheriff's Department Address Rather than the Deputies' Residences, Which Often are Closer to Defendants they Serve Papers to, Adding to the Overcharging of Consumer Class Victim Plaintiffs.**

43.    By the Defendant Sheriffs not requiring sheriff deputies to serve papers with a mileage start-point from their residences, Plaintiff Consumer Class members are overcharged.

44.    Sheriff deputies are hired from locations throughout each and every county in Maine.

45.    Furthermore, deputies potentially could live in one county and work as a deputy in another county.

46.    These deputies are often located closer to civil Defendants compared to the sole county sheriff department which could be an hour or more from the Defendant services.

47.    Some sheriffs departments in Maine uprightly and scrupulously have a policy to allow their deputies to serve papers with commencing for mileage purposes from their residences.

48.     The actions of some sheriffs in not price-gouging at least in regards to the start point for mileage purposes shows that it is quite possible for all departments to act with this integrity at least in part.

49.     The fact that despite the fact that it would be simple for departments to allow their deputies to serve from their homes and pro-rate multiple service papers shows it is not only possible, it is just as easy to administer.

50.     Still, these Defendants fail to do the proper thing by their constituents quite simply for greedy and self-serving reasons: so they can have more money in their budget for themselves and/or the county commissioners to distribute for their own purposes.


**D.  The Plaintiff Consumer Class Victims are Individuals, Businesses, Attorneys and Law Firms who have been Damaged in the Millions of Dollars as a Class.**

51.     The Consumer Class has likely been unlawfully price-gouged in the millions of dollars in the last decade by Defendants.

52.     Maine consumers are protected by law from the above described price gouging.

53.     Maine has adopted sections of the Uniform Commercial Code that prohibit defendants' actions described herein.

54.     Moreover, the Maine Unfair Trade Protection Act classes defendants' actions as unconscionable.

55.     Defendants had a legal duty and obligation to set a fair, affordable and reasonable price and not hold consumers hostage by forcing them to pay exorbitant prices for its monopolistic and necessary product.


**E. The Rights to be free from Coercive Monopolies, Government Profiteering, "Price Gouging".**

56.    Maine consumers are protected by law from the above described illegal price-gouging by the Maine Unfair Trade Practices Act, ("MUTPA"), 5 M.R.S. § 207.

57.    Maine has adopted sections of the Uniform Commercial Code that prohibit Defendants' actions described herein.

58.    Moreover the MUTPA classes defendant's actions as unconscionable.

59.    Pursuant to 5 M.R.S. § 207, "unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful."

60.    Pursuant to 5 M.R.S. § 213(1), any consumer who purchases goods or services for personal, family or household purposes from a person whose unfair or deceptive trade practices cause any loss of money or property to the consumer may bring an action in Superior Court or District Court for actual damages, attorney's fees and costs, restitution and for such other equitable relief as the court deems necessary and proper.

61.    Defendants have a legal duty and obligation to set a fair, affordable and reasonable price and not hold consumers hostage by forcing them to pay exorbitant prices for a simple procedure of serving papers, especially when Defendants have intentionally wiped-out its free-market competition.

62.    Instead of changing their anticompetitive actions, some sheriffs have apparently "doubled-down" on their unscrupulous behavior.  Apparently the Franklin County Sheriff's Department refuses to serve any more service documents for Class Representative Carey & Associates.  They will not respond to multiple requests to serve a civil defendant Richard Dalot.  Furthermore, at least one sheriff is abusing his power and making this personal.  When Seth T. Carey, Esq. complained that he was withholding payment for yet another exorbitant price-gouging from the Oxford County Sheriff until this matter was resolved in court, Sheriff Wayne Gallant refused to have his deputies serve any more papers for Carey's clients, causing damage to them, and embarrassment to Carey.

63.     Moreover, Sheriff Gallant filed a bogus bar complaint against Plaintiff Carey to make him "go away" and intimidate and scare him.  This was a sad and pitiful attempt to ruin Carey's professional career and demonstrates first-hand the lack of integrity from an official elected to represent the best interests of his constituents, not do the opposite- price-gouge and defraud them.

### F.  Some Defendants Failed to Comply with Maine's Freedom of Information and Access Laws 13 M.R.S.A. §408-A

64.     While the majority of sheriffs departments complied with their legal duty to respond to a Freedom of Access Act, ("FOAA") request from Plaintiffs, several did not.

65.     Those parties are now served notice of this tortious action in compliance with the Maine Torts Claims Act.

66.     The noncompliant sheriff's departments are: York County, Kennebec, Franklin, Washington, and Hancock.

67.     Those particular Defendants had a duty to comply with the FOAA.  They did not and they are therefore liable for their willful refusal to comply with the law.

### CLASS ACTION ALLEGATIONS

68.     Pursuant to Rule 23 of the Maine Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and a Class, defined as follows:

69.     All individuals, civil attorneys and law firms in Maine who have engaged by monetary payment one or more Maine sheriff departments to serve documents on their behalf and been the victim of double-charging, price-gouging, non-pro-rated mileage charges, not requiring sheriff deputies to serve papers with a start-point from their residences, which is often located closer to civil Defendants compared to the sole county sheriff department which could be an hour or more from the Defendant services.

70.    Also included, by and through those class representatives or their attorneys who requested information on service charges from Defendants but did not receive responses.  For purposes of the Class definition, individuals "purchased" service from the sheriff department(s) if they requested such action individually or their attorneys did so on their request or at the attorneys own direction.

71.    Excluded from the Class are Defendants and any entities in which any Defendant has a controlling interest, and its legal representatives, officers, directors, assignees and successors. Also excluded from the Class are any judges or justices to whom this action is assigned, together with any relative of such judge(s) or justice(s) within the third degree of relationship, and the spouse of any such person.


**A. NUMEROSITY**

72.     The Class is so numerous that joinder of all members is impractical.

**B. TYPICALITY**

73. The claim of the representative Plaintiffs are typical of the claims of the Class, in that Plaintiffs, like all consumer Class members, purchased civil service from Defendant are/were overcharged, price-gouged, and/or defrauded.

**C. SUPERIORITY**

74.    The class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**D. ADEQUACY**

75.    Plaintiff representative will fairly and adequately represent and protect the interest of the Class and have retained experienced Counsel attorney Seth T. Carey.

**E. COMMONALITY**

76.    Common questions of law and fact exist as to all members of the class and predominate over any question solely affecting individual members of the class, including but not limited to that each class member purchases civil

service from Defendants and has no reasonable way to access an alternative means of service.

77.     This case is maintainable as a class action under Maine Rule of Civil Procedure 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants.

78.     Class certification is appropriate under Maine Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the class predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices were applied to all members of the class and violated the Maine Consumer Sales Practices Act, and constituted breach of contract, breach of duty of faith and fair dealing, and fraud. The damages suffered by the individual class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments of Defendants' practices.

79.     Plaintiffs intend to send notice to all members of the class to the extent required by Rule 23. The Names and addresses of the class are readily available from Defendants.

**INTRODUCTION TO ANTITRUST AND RELATED CLAIMS**

80.     Antitrust Plaintiffs and putative Class Representatives Seth T. Carey and Carey & Associates bring this action both individually and on behalf of antitrust damages and injunctive relief classes (collectively, the "Antitrust Classes" or "Antitrust Class")) consisting of those who have been price-gouged and overcharged for service by Defendant sheriff departments from January 1, 2007 and continuing until a final judgment in this matter (the "Antitrust Class Period"), or may be in the future.

14

81.    For purposes of the injunctive relief class only, the Antitrust Plaintiffs also bring this action on behalf of current civil service clients that have used or are using Defendants' services described above, as well as former service clients, as both groups' future compensation rights are impacted by the anti-competitive practices described herein.

82.    Defendants, and their co-conspirators have committed violations of the state and federal antitrust laws by engaging in a price-gouging and an excessive fee conspiracy.

83.    The Antitrust Plaintiffs also set forth a claim for unjust enrichment and request that the Court require Defendants to provide an accounting of ill-gotten gains and the monies unlawfully withheld from Antitrust Class members.

84.    The Antitrust Plaintiffs further request that the Court establish a constructive trust for the benefit of class members and for the purpose of holding in trust the service revenues that Defendants and their co-conspirators have unlawfully diverted from Antitrust Class members.

85.    Defendants have additionally conspired to deprive Antitrust Class members from receiving compensation in connection with the service fees.

86.    The U.S. Supreme Court has repeatedly articulated that the FTC Act (the federal counterpart to Maine's UTPA to which courts look in interpreting the UTPA) was intended in part to arrest anticompetitive actions that had not yet matured into Sherman Act violations.

87.    "All of the committee reports and the statements of those in charge of the [FTC] Act reveal an abiding purpose to vest both the Commission and the courts with adequate powers to hit every trade practice, then existing or thereafter contrived, which restrained competition *or might lead to such restraint if not stopped in its incipient stages." FTC v. Cement Institute*, 33 U.S. 683 (1948) (emphasis added).

88.    Private parties (including businesses) who have been injured directly or indirectly by acts which violate the monopolies & profiteering law may sue to recover treble damages suffered as a result of the Defendants'

conduct; in addition, attorney fees and costs are available to a prevailing Plaintiff. Private Plaintiffs may also be entitled to injunctive relief (*i.e.*, a court order barring a continuation or repetition of the offending conduct). Similarly, a private consumer injured by conduct violative of the UTPA may seek injunctive or monetary relief under that statute; again, a prevailing Plaintiff is entitled to attorney fees and costs.

89.    The Attorney General is vested by law under 10 M.R.S.A. § 1104 (1997); 5 M.R.S.A. § 213 (2002) with the legal authority to protect the state's sovereign interests, the integrity of its marketplace and the interests of consumers by enforcing the State's antitrust laws. Under the monopolies & profiteering law, violations of the prohibitions against agreements in restraint of trade and monopolization may be prosecuted either civilly or criminally; a violation of either provision is a Class C crime, exposing the perpetrator to a maximum of five years incarceration, four years probation, $5,000 in fines, and an order for restitution.

90.    However, everyone knows that the Attorney General is part of the State establishment and would refuse to enforce anti-trust laws against The Defendant sheriff's departments in this case.  Therefore, it is more reasonable only to sue the Defendants privately, (although the AG doing her job and enforcing the law uniformly in this instance would be a welcome surprise).

91.    When the Attorney General proceeds civilly under the monopolies & profiteering law, she may seek injunctive relief (a court order) to restrain violations, and (in the case of agreements in restraint of trade and monopolization offenses) a civil penalty not to exceed $100,000 for each violation. In addition, she may seek treble damages on behalf of injured state agencies, or as *parens patriae* on behalf of consumers injured directly or indirectly by the offending conduct, 10 M.R.S.A. § 1104 (1997); *Lund ex rel. Wilbur v. Pratt* 308 A.2d 554, 558 (Me. 1973); *see also*

*Federal Trade Commission v. Mylan Laboratories, Inc.* 99 F.Supp.2d 1, 7 (D. D.C. 1999) (reinstating a dismissed antitrust claim for damages brought by Maine Attorney General as *parens patriae* under Maine's monopolies & profiteering law).

92.  The Attorney General may also proceed civilly under the UTPA, and in that context may seek injunctive relief, restitution on behalf of injured consumers, and, in the case of intentional violations, a civil penalty not to exceed $10,000 for each violation, 5 M.R.S.A. § 203 (2002).

**CLASS ACTION ALLEGATIONS WITH RESPECT TO ANTITRUST CLAIMS**
**ANTITRUST ALLEGATIONS**

93.  Defendants' contract, combination, and conspiracy described here in consisted of a continuing agreement, understanding, and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to artificially fix, and/or inflate civil service prices.

94.  Defendants and various co-conspirators facilitated the price-gouged prices and conspiracy described herein, and benefited financially from its operation.

95.  Antitrust Plaintiffs bring this action under Maine Rule of Civil Procedure 23(b)(2) and (b)(3) on their own behalf and on behalf of the following Antitrust Classes: The "Antitrust Declaratory and Injunctive Relief Class": All current and former clients of sheriff civil service departments in Maine residing and/or doing business in the Maine who were overcharged and/or price-gouged by these sheriff's departments for the civil service they paid to have done, their co-conspirators, and/or their licensees. The Class also excludes the officers, directors, and employees of Defendants. The "Antitrust Damages Class": All former civil service clients of Defendants from January 1, 2007 and continuing until a final judgment in this matter.

96.    The class also includes current and future price-gouged clients of Defendants that hire Defendant(s) after the filing of this lawsuit. The Class also excludes the officers, directors, and employees of Defendants, the officers, directors, and employees of any Maine county commissioners office.

97.    Members of the Antitrust Damages and Declaratory and Antitrust Injunctive Relief Classes are collectively referred to herein as the "Antitrust Class" or the "Antitrust Classes" unless otherwise individually specified.

98.    In addition to seeking certification of statewide classes for the antitrust claims, Plaintiffs also seek certification of a statewide class for purposes of their unjust enrichment / constructive trust and accounting claims.

99.    Antitrust Plaintiffs do not know the exact number of Antitrust Class members, because that information is in the exclusive control of Defendants and third parties.

100.   However, due to the nature of the trade and commerce involved, Plaintiffs believe that the Antitrust Class members number in the thousands and are geographically diverse so that joinder of all Antitrust Class members is impracticable. Given that the Defendants have carried on this unlawful scheme for many years, as described herein, it stands to reason that there are more former victims of Defendants' price-gouging than current ones affected by the Defendants' anticompetitive practices described herein.

101.   There are questions of law and fact common to members of both the Antitrust Damages Class and the Antitrust Declaratory and Injunctive Relief Class, including but not limited to the following:

    a. whether Defendants and their co-conspirators engaged in or entered into a contract, combination, or conspiracy among themselves to fix, depress, maintain, and/or stabilize prices charged to Antitrust Class members for service fees;

    a. the duration of the contract, combination, or conspiracy alleged herein;

    b. whether Defendants violated Section 1 of the Sherman Act;

c. whether Defendants' service charges and any similar charges, are void and refundable;

g.    whether the conduct of Defendants and their co-conspirators caused injury to the business or property of Plaintiffs and Antitrust Class members.

102.   Additional common questions of law of fact specific to the Antitrust Damages Class include the following:

a. the appropriate measure of damages sustained by Plaintiffs and class members; and

b.    whether Defendants have been unjustly enriched.

The common questions with respect to the Antitrust Damages Class predominate over questions, if any, that affect only individual Antitrust Damages Class members.

103.   With respect to the Antitrust Declaratory Relief and Injunctive Relief Classes, common questions of law or fact include the following:

a. whether injunctive relief is appropriate;

b. if injunctive relief is appropriate, what types of such relief are suitable in this matter;

d. whether declaratory relief is appropriate;

e. whether a constructive trust for the benefit of class members should be established; and

f. whether an accounting is appropriate.

104.   With respect to members of the Antitrust Declaratory and Injunctive Relief Class, Defendants have acted or refused to act on grounds generally applicable to the Antitrust Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Antitrust Declaratory and Injunctive Relief Class as a whole.

105.    Antitrust Plaintiffs' claims are typical of, and not antagonistic to, the claims of the other Antitrust Class members. By advancing their claims, Antitrust Plaintiffs will also advance the claims of all Antitrust Class members,

because Defendants participated in activity that caused all Antitrust Class members to suffer similar injuries.

106.    Antitrust Plaintiffs and their counsel will fairly and adequately protect the interests of absent Antitrust Class members. There are no material conflicts between Antitrust Plaintiffs' claims and those of absent Antitrust Class members that would make class certification inappropriate. Counsel for Antitrust Plaintiffs will vigorously assert Plaintiffs' claims and those of absent Antitrust Class members.

107.     A class action is superior to other methods for the fair and efficient resolution of this controversy. The class action device presents fewer management difficulties, and provides the benefit of a single adjudication, economy of scale, and comprehensive supervision by a single court.

108.    The damages suffered by Antitrust Plaintiffs and each Antitrust Damages Class member are relatively small as compared to the expense and burden of individual prosecution of the claims asserted in this litigation. Thus, absent class certification, it would not be feasible for Plaintiffs and Antitrust Class members to redress the wrongs done to them.

109.    It also would be grossly inefficient for the judicial system to preside over large numbers of individual cases. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the judicial system. Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF MAINE FREEDOM OF ACCESS ACT

110.   Plaintiff incorporates by reference all preceding paragraphs, as well as the paragraphs that follow in this Complaint, as if fully set forth herein.

111. Publicly-financed and otherwise public entities in this state, whether town, state or county have a duty to comply with the FOAA.

112. Certain Defendant sheriff departments intentionally shirked their duty to comply with the FOAA when they refused to answer some simple questions about their civil service practices.

113. Those non-compliant Defendants are: York County, Kennebec, Franklin, Washington, and Hancock.

114. Those departments received the letter with the questions that stated the inquires were being requested under the FOAA law.

115. Those departments willfully ignored these requests and are therefore liable under FOAA for damages.

## COUNT II
## VIOLATIONS OF THE MAINE UNFAIR TRADE PRACTICES ACT

116. Plaintiff incorporates by reference all preceding paragraphs, as well as the paragraphs that follow in this Complaint, as if fully set forth herein.

117. The Maine Unfair Trade Practices Act ("MUTPA"), provides that no supplier shall commit an unconscionable act or practice in connection with a consumer transaction.

118. A "consumer" is a person who engagers in a consumer transaction with a supplier.

119. A "supplier" is a person engaged in the business of effecting or soliciting consumer transactions, whether or not he/she deals directly with the consumer.

120. A "consumer transaction" is a transaction in which an item is purchased for the purposes that are primarily personal, family, or household.

121. The MUTPA prohibits a supplier from knowingly taking advantage of a consumer's inability to protect their own interest due to, inter alia, physical infirmities.

122.   Defendants' conduct and unlawful conspiracy, as alleged above, constituted and constitutes unfair, unlawful and fraudulent business practices in violation of the Maine Unfair Trade Practices Act. The conduct is unfair, unlawful, and fraudulent.

123.    The consistent pattern and practice of Defendant Sheriff Departments of overcharging consumers such as the Plaintiffs and the putative class members for service fees constitutes an unconscionable act or practice in connection with a consumer transaction, in violation of the MUTPA and the Maine version of the Uniform Commercial Code.

124.    Plaintiffs and each putative class member are entitled to recover damages and other appropriate relief.

125.    Defendants' conduct has further caused and is causing damage and irreparable injury to Plaintiffs and class members. Plaintiffs and class members are accordingly entitled to disgorgement of Defendants' profits and injunctive relief, plus interest and attorneys' fees under the statute, and request the following injunctive relief: (a) that Defendants be ordered to cease and desist from continuing to unlawfully price-gouge and overcharge Plaintiffs and class members and (b) that Defendants disgorge all their profits obtained from the unlawful ill-gotten profits derived from Plaintiffs and class members.


**COUNT III**
**BREACH OF THE DUTY OF GOOD FAITH & FAIR DEALING**

126.    Plaintiffs incorporates by reference all preceding paragraphs, as well as the paragraphs that follow in this Complaint, as if fully set forth herein.

127.    Implicit in each consumer transaction described above was a duty of good faith and fair dealing from Defendants to each consumer.

128.    This duty is also made explicit by the Maine version of the Uniform Commercial Code as listed above.

129.   Defendant breached each duty by charging an excessive and unjustified prices for service fees to the plaintiff and class members.

130.   Plaintiffs and the Class have been damaged as a direct and proximate result of Defendants' conduct and breach.

**WHEREFORE,** Plaintiffs, on behalf of himself and the members of the Class respectfully seeks the relief set forth below.

## COUNT IV
## VIOLATION OF ANTI-TRUST STATUTES

131.   Plaintiffs incorporates by reference all preceding paragraphs, as well as the paragraphs that follow in this Complaint, as if fully set forth herein.

132.   Maine's monopolies & profiteering law is modeled on the federal Sherman Act. This statute prohibits a broad range of activities that tend to decrease competition or restrain trade.

133.   Specifically, 10 M.R.S.A. § 1101 prohibits agreements in restraint of trade (including price-fixing, bid-rigging, market allocation, group boycotts and tying agreements). Unreasonable restrictions on competition—those whose anticompetitive effects outweigh efficiencies or procompetitive benefits—are illegal.

134.   Defendants and their co-conspirators' total abridgment of their duty to the citizens of this state that have been victimized by tortfeasors and criminals, is not connected to any legitimate non-commercial goal. Defendants' actions are solely to enhance revenue for themselves and their county commissioners, by ripping their civil service customers off. Defendants' actions directly regulate a commercial market and therefore are illegal. Defendants have facilitated this illegal scheme, and have financially benefited from it.

135.   As a direct and proximate result of Defendants' scheme, Antitrust Plaintiffs and the members of the Antitrust Class have been injured and financially damaged in amounts which are presently undetermined. Antitrust Plaintiffs' and Antitrust Class members' injuries consist of being price-gouged and overcharged for service. Antitrust Plaintiffs' and Antitrust Class members' injuries are of the type the antitrust laws were designed to prevent and flow from that which makes Defendants' conduct unlawful.

136.   Defendants' and their co-conspirators' have collectively conspired to illegally rip off their customers. This anticompetitive and illegal scheme has unreasonably restrained trade.

137.   The anticompetitive effects of Defendants' scheme substantially outweigh any alleged procompetitive effects that may be offered by Defendants. Reasonable and less restrictive alternatives are available to Defendants' current anticompetitive practices.

138.   Antitrust Plaintiffs and Antitrust Class members are entitled to a declaratory judgment declaring as void and unenforceable all forms that purport to grant, transfer, or convey the rights of former student-athletes in the use of their images.

139.   Antitrust Plaintiffs and the Antitrust Class are entitled to a permanent injunction that terminates the ongoing violations alleged in this Complaint.

**COUNT V**
**VIOLATION OF SHERMAN ANTI-TRUST ACT**
**Violation of Section 1 of the Sherman Act – 15 U.S.C. § 1**
**Unreasonable Restraint of Trade – Boycott / Refusal to Serve Civil Service**
**Papers**

140.   Antitrust Plaintiffs incorporate and re-allege each allegation set forth in the preceding paragraphs dealing with the claims of the Antitrust Class.

141.   Defendants and some of them, purposefully refused to serve civil papers for Plaintiff Carey Law when Plaintiff Carey Law refused to pay the price-gouged charge for service of previous papers.

142.   Oxford County and Kennebec County Sheriffs responded in this unscrupulous manner.

143.   This action constitutes a conspiracy in restraint of trade to effectuate a horizontal boycott of Antitrust Class Members.

144.   Defendants' actions and inactions encompass Defendants' concerted refusal to charge a lawful and reasonable price for service and to otherwise concertedly act to prevent Class Members from being charged fairly, in the

United States and its territories and possessions, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

145.   Defendants' total abridgment of fair pricing is not connected to any legitimate non-commercial goal.

146.   Defendant sheriffs' actions are solely to enhance revenue for themselves and their Defendant county commissioners.

147.   Defendants' actions directly regulate a commercial market and therefore are illegal.

148.   Defendants have participated in this illegal scheme, and has financially benefited from it.

149.   As a direct and proximate result of certain Defendants' boycott, Antitrust Plaintiffs and the members of the Antitrust Class have been injured and financially damaged in amounts which are presently undetermined.

150.   Antitrust Plaintiffs' and Antitrust Class members' injuries are of the type the antitrust laws were designed to prevent and flow from that which makes Defendants' conduct unlawful.

151.   Antitrust Plaintiffs and the Antitrust Class are entitled to a permanent injunction that terminates the ongoing violations alleged in this Complaint.

**COUNT VI**
**VIOLATION OF SHERMAN ANTI-TRUST ACT**
**(Unlawful Exclusive Dealing and Other Exclusionary Agreements in Violation of Section 1 of the Sherman Act)**

152.   Plaintiffs incorporate by reference all preceding paragraphs, as well as the paragraphs that follow in this Complaint, as if fully set forth herein.

153.   Defendants' have engaged in anti-competitive processes, acquired and perpetuated a monopoly on civil service in Maine unreasonably restricts competition and harmed competition in this market, to the detriment of consumers in violation of Section 1 of the Sherman Act, 15 U.S.C. section 1.

154.   Prices charged by offending Defendants are unjustified and far above those that would exist in a competitive market.

155.   Plaintiffs are informed and believe that Defendants knew and intended that the result of their anti-competitive actions would be to acquire and perpetuate a monopoly, unreasonably restrain trade, and harm competition, businesses, and consumers.

156.   Defendants' purposeful and deliberate elimination of part-time deputies and disallowing others to serve process unreasonably restrains trade and restricts the access of Defendants' competitors to significant channels of distribution, thereby restraining competition in the civil service market.

157.   The purpose and effect of this monopoly is to restrain trade and competition in the service markets. These monopolies violate Section 1 of the Sherman Act, 15 U.S.C. § 1.

158.   The continuing anticompetitive effect of the agreements is substantial; the modified agreements are themselves anticompetitive and there is a serious threat that, unless enjoined, Defendants will continue to gouge Maine citizens and law firms.

159.   Due to the anti-competitive actions by Defendants in unreasonable restraint of trade and which harm competition, Plaintiffs are entitled to preliminary and permanent injunctive relief.  Such relief should include an order, for example:

> Enjoining the Defendants from price-gouging their customers;
>
> (a) That the civil service field be opened up to other non-sheriff's department employees;
>
> (b) Imposing reasonable price constraints and service requirements on Defendants;

160.   Under this cause of action, Plaintiffs also are entitled to recovery of their attorneys' fees and costs pursuant to 15 U.S.C. section 15(a).

## COUNT VII
## VIOLATION OF SHERMAN ANTI-TRUST ACT
### Monopolization Under Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2

161.  Plaintiff incorporates the allegations in paragraphs above as if incorporated fully herein.

162.  Defendants possess monopoly power in the market for civil service in Maine. Through the anticompetitive conduct described herein, Defendants have willfully maintained, and unless restrained by the Court will continue to willfully maintain, that power by anticompetitive and unreasonably exclusionary conduct.

163.  For purposes of this cause of action, the relevant geographic market is Maine.

164.  Defendants have acted with an intent illegally to maintain their monopoly power in the service market, and its illegal conduct has enabled it to do so, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

165.  Plaintiffs are informed and believe that Defendants have unreasonably restrained trade, and harmed competition to the detriment of businesses and consumers and in violation of 15 U.S.C. section 2.

## COUNT VIII
## VIOLATION OF 10 M.R.S.A. § 1101

166.  The allegations set forth in the preceding paragraphs are incorporated herein by reference.

167.  State law mirrors federal laws against anti-trust and price-gouging as laid out in the Sherman Act.

168.  Defendants have violated provisions of the local provisions regarding this area as stated in 10 M.R.S.A. § 1101, et als, *(See generally* 10 M.R.S.A. §§ 1101 to 1109 (1997 & Supp. 2000).

169.  For antitrust purposes, a violation of the Maine's monopolies & profiteering law is also *ipso facto* violation of the UTPA.

170.  Defendants are therefore liable under these provisions.

## COUNT IX

## VIOLATION OF CLAYTON ANTITRUST ACT 15 U.S.C. § 14

171.   The allegations set forth in the preceding paragraphs are incorporated herein by reference.

172.   Substantively, the Act seeks to capture anticompetitive practices in their incipiency by prohibiting particular types of conduct, not deemed in the best interest of a competitive market.

173.   Defendants, by creating a monopoly wherein they price-gouge consumers, "double-bill" and do not pro-rate mileage and manipulate mileage by having their deputies charge from their sheriff department headquarters rather than the deputies home, are in violation of 15 U.S.C. § 14.

174.   The Act empowers private parties injured by violations of the Act to sue for treble damages under Section 4 and injunctive relief under Section 16. The Supreme Court has expressly ruled that the "injunctive relief" clause in Section 16 includes the implied power to force defendants to divest assets

175.   Accordingly, under the Clayton Act, Section 4, Plaintiff Class is entitled to treble damages and attorneys fees for Defendants tortious anti-competitive actions, as well as injunctive relief under Section 16.

## COUNT X
### VIOLATION OF SHERMAN ANTI-TRUST ACT
### Attempted Monopolization of the Civil Service Market in Violation of Section 2 of the Sherman Act

176.   Plaintiff incorporates the allegations in paragraphs above as if incorporated fully herein.

177.   Defendants eliminated those alternative servers who had the potential to compete with them. Defendants willfully engaged, and continue to engage, in a course of conduct, in order to obtain a monopoly in the service market, and there is a dangerous probability that, unless restrained, it will succeed, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

178.   Defendants have acted with a specific intent to monopolize, and to destroy effective competition in, the civil service market.

## COUNT XI
## VIOLATION OF FEDERAL TRADE COMMISSION ACT
## 15 U.S.C. §§ 41-52 (2000).

179.   Plaintiff incorporates the allegations in paragraphs above as if incorporated fully herein.

180.   The Federal Trade Commission Act declares unfair methods of competition and unfair acts or practices in the conduct of trade or commerce illegal.

181.   Defendants have violated the FTCA in purposely instituting the unfair methods of competition and unfair acts and practices of unreasonably price-gouging and over-charging consumers of civil service in the state.

182.   Therefore, Defendants have violated the FTCA.

## PRAYER FOR RELIEF

**WHEREFORE, PLAINTIFF PRAYS FOR RELIEF REGARDING DEFENDANTS' VIOLATION OF ANTI-TRUST LAWS AS FOLLOWS:**

1.  That the Court adjudge and decree as follows:
    a.  That Defendants' conduct in monopolizing the civil service market violates Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2;
    b.  That Defendants' conduct in eliminating their competition violates Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2;
    c.  That Defendants have attempted to monopolize the market for civil service in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; and
    d.  That Defendants have willfully maintained its monopoly in the market for civil service in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

2.  That Defendants, all persons acting on their behalf or under their direction or control, and all successors thereto, be preliminarily and permanently enjoined from:

  e.  Monopolizing the Maine civil service market;

  f.  Requiring or inducing any person to agree not to serve civil papers, or to do so on any disadvantageous, restrictive or exclusionary terms;

  g.  Taking or threatening any action adverse to any person in whole or in part as a direct or indirect consequence of such person's attempt to service civil service papers;

3.  That the Court enter such other preliminary and permanent relief as is necessary and appropriate to restore competitive conditions in the markets affected by Defendant's unlawful conduct.

4.  That the Court enter such additional relief as it may find just and proper.

5.  That the Court order restitution be paid for the amounts gouged by the Defendants back to the consumers that were swindled.

6.  That the Plaintiffs recover the costs and attorneys fees of this action.

## COUNT XII
## CIVIL CONSPIRACY
### (As Against All Defendants)

183.  Right of Publicity Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

184.  On information and belief, Defendants, and each of them, have conspired and combined with each other, and possibly with third parties, to price-gouge and overcharge class members, and have achieved a meeting of the minds, through either express or tacit agreement, on an object or course of action of the conspiracy.

185.  Defendants have formed and operated a civil conspiracy with each other, performing as a part of the conspiracy numerous overt acts in furtherance of the common design, including one or more unlawful acts which were performed

to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal.

186.   As a result of the conduct of Defendants and the conspiracy, Plaintiffs and class members have been damaged as described above.

## COUNT XIII
## UNJUST ENRICHMENT

187.   Plaintiffs incorporate by reference all preceding paragraphs, as well as the paragraphs that follow in this Complaint, as if fully set forth herein.

188.   Defendants have been unjustly enriched as a result of the unlawful conduct detailed herein at the expense of Plaintiffs and Class members.

189.   By engaging in conduct described in this Complaint, Defendants have knowingly obtained benefits from Plaintiffs and the Class under circumstances such that it would be inequitable and unjust for the Defendants to retain them.

190.   Thus, Defendants will be unjustly enriched if it is permitted to retain the full amounts paid to them by Plaintiffs and the members of the Class.

191.   Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred upon them via their wrongful conduct, and it would be unjust for them to be allowed to do so.

192.   As a proximate result of Defendants' conduct, Defendants have been unjustly enriched by the willful violation of their duty to their civil service patrons and the citizens of this state as outlined in the state's statutes, the Sherman Act, and the Clayton Act.

193.   Defendants' conduct conferred a benefit upon themselves at the expense of its clients. Defendants were aware of this benefit and the fact that this benefit came at the expense of the its patrons.

194.   Plaintiffs and the Class are therefore entitled to an award of compensatory and punitive damages in an amount to be determined at trial or to the imposition of a constructive trust upon the wrongful profits obtained by, revenues obtained by, and benefits conferred upon Defendants as a result of

their wrongdoing and the payments made by Plaintiffs and members of the Class.

195.  Plaintiffs seek disgorgement of all Defendants' profits resulting from the wrongful conduct described herein and establishment of a constructive trust from which Plaintiffs and the Class members may seek restitution.

**WHEREFORE**, Plaintiffs, on behalf of itself and the members of the Class, respectfully seek the relief set forth below.

## COUNT XIII
## ACCOUNTING
### (Against All Defendants)

196.  Plaintiffs incorporate and re-allege each allegation set forth in the preceding paragraphs dealing with the claims of the Class.

197.  As a result of the illegal conduct alleged herein, Defendants have received revenues in various forms and amounts.

198.  Upon a determination of liability, an accounting of the illegally-charged service fees that Defendants have wrongfully diverted to themselves and other entities will be required in order to determine damages in the form of each Plaintiff's and Class members' compensation and restitutions.

199.  Antitrust Plaintiffs and the members of the Class cannot identify at this time, among other things; (a) the total amount of illegally-charged service fees the Defendants and their co-conspirators charged Class Members and Plaintiffs, (b) how the different overcharging schemes in each Defendant department is arranged and systematized, (c) Plaintiffs seek to recover for themselves and the members of the Class the full amount of the illegally-gotten revenues described herein; this amount is ascertainable and will be determined by an audit and accounting of each departments' revenues by professional accounts upon a determination of liability.

200.   The amount of revenue generated from the exploitation of Class Members, including the tracing the revenue resulting from each transaction, requires a full and complete accounting.

201.   Also, the costs of bringing this suit, including reasonable attorneys' fees should be awarded to Class; and

202.   That the court also award all other relief to which Plaintiffs and class members may be entitled at law or in equity.

203.   Calculation of the amounts due to Antitrust Plaintiffs and Antitrust Class members will involve many hours of accounting.

204.   Industry accounting standards may need to be determined, understood and applied, revenues may need to be traced through the various Defendants and their co-conspirators and parties involved in the transactions, and tax consequences may also be considered.

## COUNT IXV
## VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

205.   Plaintiffs incorporate and re-allege each allegation set forth in the preceding paragraphs dealing with the claims of the Class.

206.   Defendants, by their above described acts, engaged in a pattern of racketeering activity through the performance of at least two acts of racketeering within a ten-year period with their scheme to defraud the Plaintiff Class.

207.   Defendants concealed and omitted to disclose their conspiracy to fraudulently, falsely and recklessly price gouge the vast majority of their civil service clients and other violative behavior.

208.   In their actions and inactions the Defendants have engaged in a activities on an ongoing and prevalent basis, constituting the requisite pattern under RICO.

209.     Defendants received income derived, directly or indirectly, from a pattern of racketeering activity to produce massive illegal and otherwise ill-gotten financial gains to use directly or indirectly to enhance their salaries, that of their employees, and/or to return to their county commissioners for their pet projects.

210.   Part of such income, or the proceeds of such income was used in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, commerce in violation of 18 U.S.C. 1962(a).

211.     Defendants through a pattern of racketeering activity acquired or maintained, directly or indirectly, an interest in or control of an enterprise which is engaged in, or the activities of which affect commerce in violation of 18 U.S.C. 1962(b)

212.     Defendants purposely undertook to conduct and profit from this unlawful scheme.  This pattern of behavior over a period of time constitutes the kind of racketeering that the RICO Act prohibits. Defendants have been intentionally complicit this corrupt behavior for many years violative of RICO.

213.     The requisite pattern of unjust activity engaged in by the Defendants is the scheme generally to price-gouge their civil service customers in several ways repeated thousands, if not tens of thousands of times.

214.     These are more examples of the fraudulent activities that have spanned many years that continue today that bolster the Plaintiffs' claims of an illegal pattern of fraud and racketeering.

215.     Defendants employed themselves or others in, or were associated with an enterprise engaged in, or the activities of which affect, interstate and foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. 1962(c).

216.     The above-described enterprises consists of the majority if not all of the sheriffs departments in the state of Maine.

217.     Defendants, by the above described acts, committed predicate acts in furthering their fraudulent price-gouging of consumers of civil service.

218.     Accordingly, the Plaintiffs must be made whole by being awarded injunctive relief, restitution, consequential damages, punitive damages, costs and attorney's fees assessed against the Defendants.

## COUNT XV
## PUNATIVE CONDUCT

219.   Plaintiffs incorporates by reference all preceding paragraphs, as well as the paragraphs that follow in this Complaint, as if fully set forth herein.

220.   By engaging in the conduct described in this Complaint, Defendants have intentionally disregarded the citizens within and without their counties and their constituents who elected them to office to "protect and serve" not only their safety but also their wallets from being defrauded by the very persons they entrusted their safety to.

221.   Defendants' conduct was knowing, intentional, with malice and demonstrated a complete lack of care for its consumers and was in reckless disregard of the rights of the Plaintiffs and Class members. Defendants' conduct has been outrageous and outside the bounds of decency.

222.   Defendants should be punished due to its conduct of price-gouging and overcharging their clients in order to make more profit.

 **WHEREFORE**, Plaintiffs, on behalf of itself and the members of the Class respectfully seeks the relief set forth below.


## II. <u>THE NEED FOR PRELIMINARY RELIEF</u>

223.   In the absence of preliminary relief, consumers will be deprived of non-monopolistic, non-price-gouged civil service and consumers and the public will be deprived of the benefits of competition during the pendency of this action. Relief at the conclusion of this case cannot remedy the damage done to consumers and the public during the interim.

224.  In addition, the damage to competitors and competition during the pendency of this case that would occur in the absence of preliminary relief cannot practically be reversed later.

225.   Aided by Defendants' anticompetitive conduct, now Defendants reportedly own 100% of the civil service market.

226.   Defendants' share of the service market has increased dramatically in the last two decades since they purposely monopolized the service field.  In the absence of interim relief, Defendants' share of the service market will continue to break anti-trust laws as a result of their anticompetitive practices.

227.  Defendants' former service competitors were effectively foreclosed from important opportunities to supply alternative service choices to customers so long as Defendants' exclusionary practices continue. Defendants collusion to eliminate non-sheriff deputies from the service sector accelerated its dominance and any competition's demise.

228.  In addition, the absolute barrier that exists to the entry of new competitors and the elimination of smaller previously-existing competitors, meant that dominance once achieved cannot readily be reversed without the judgment of this court.

229.  In the absence of preliminary relief, the maintenance of Defendants' position resulting from its continuing illegal conduct has so entrenched them that to reverse Defendants' domination of the service market the court must start with injunctive relief in the forms requested herein.


**DEMAND FOR RELIEF**

**WHEREFORE,** Plaintiffs, **CAREY & ASSOCIATES, P.A.**, **GEORGE SHAW**, et als. and the Class respectfully request that this Honorable Court, by and through Lead Attorney Seth Carey, final judgment be entered against Defendants declaring, ordering, and adjudging that:

A.      Certification of the action as a Class Action pursuant to Rule 23 of the Maine Rules of Civil Procedure, and appointment of Plaintiffs as the Class

Representatives and their counsel of record Seth T. Carey, Esq. as Class Counsel;

B.     That the contract, combination, or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators, be adjudged to have been in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and that they are each jointly and severally liable for the conduct of or damage inflicted by any other defendant;

C.     The aforesaid civil service actions of Defendants unreasonably restrain trade and are illegal under Section 1 of the Sherman Act, 15 U.S.C. § 1 and Maine statute;

D.     The aforesaid actions unreasonably restrained trade through monopolization or attempted monopolization, which is illegal under Section 2 of the Sherman Act, 15 U.S.C. § 2;

E.     The aforesaid civil service actions are acts in commerce where the effect was to substantially lessen competition or tend to create a monopoly in any line of commerce, which is illegal under the Clayton Act, 15 U.S.C. § 14.

F.     The aforesaid actions unreasonably restrain trade and are illegal under the Maine Monopolies and Profiteering Law, 10 M.R.S.A. §§ 1101 to 1109;

G.     The aforesaid actions unreasonably restrained trade through monopolization or attempted monopolization, which is illegal under Maine Monopolies and Profiteering Law;

H.     The aforesaid service actions were unfair, false, misleading, or deceptive acts or practices in the conduct of trade or commerce, and they are illegal under Maine Monopolies and Profiteering Law.

I.     Defendants be permanently enjoined from engaging in, enforcing, carrying out, renewing, or attempting to engage in, enforce, carry out, or renew the aforesaid service actions, or any other agreement having similar purposes or effects in violation of 15 U.S.C. §§ 1-2, 14;

J.     That Plaintiffs recover damages, as provided by the law, and the amount of such damages be trebled;

K.      Order Defendants to pay a civil penalty for each willful violation of Maine Monopolies and Profiteering Law;

L.      Order Defendants to pay restitution for any willful violation of Maine Monopolies and Profiteering Law, in an amount to be determined at trial;

M.      Order Defendants to make restitution to all affected parties due to Defendants' unfair competition, including disgorgement of wrongfully-obtained revenues, earnings, profits, compensation, and benefits;

N.      Grant the Plaintiffs, pursuant to 15 U.S.C. § 15c(a)(2) and 15 U.S.C. § 26, its attorney's fees; and

O.      Grant such other relief as may be determined to be in the public interest in order to preserve a procompetitive market for civil service in the state of Maine.

P.      Actual damages, statutory damages, punitive damages, and such other relief as provided by the statutes cited herein;

Q.      That judgment be entered for Plaintiffs and members of the Class against Defendants for treble damages, (three times the amount of damages) sustained by Plaintiffs and the Class as allowed by law, together with the costs and expenses of this action, including reasonable attorneys' fees;

R.      Disgorgement of all profits earned by Defendants from the overcharging of civil service fees as well as restitution to Plaintiffs and class members;

S.      That Plaintiffs and Class members be awarded any available prejudgment and post-judgment interest on such monetary relief;

T.      That Plaintiffs Class members are entitled to Declaratory relief declaring that Class Members were fleeced and overcharged by Defendants, to be proven in the exact amount by tracing the revenue resulting from each transaction, which requires a full and complete accounting. This is so because determining the amounts due will involve a fuller understanding and accounting of the various transactions, parties and revenues involved.

U.      Equitable relief in enjoining future overcharging and price-gouging by Defendants, and declaring null, void and/or unenforceable any contractual

provisions or ex post facto statutory laws passed by the Maine Legislature purporting to limit the rights of Plaintiffs and class members to receive compensation for their injuries;

V.      The costs of bringing this suit, including reasonable attorneys' fees; and

W.      All other relief to which Plaintiffs and class members may be entitled at law or in equity.


**RIGHT OF PUBLICITY**
**JURY DEMAND**
Plaintiffs demand a jury trial on all issues so triable, pursuant to Maine Rule of Civil Procedure 38(b), of all triable issues.


## NATURE OF THE INJURY SUSTAINED/MONETARY DAMAGES

Plaintiff Class has endured predatory price-gouging by offending sheriff's departments and county commissioners for years.  These unlawful practices likely number in the tens of thousands of occurrences over the last decade or longer.  Tortfeasors have abused the power and trust the citizens of this state and beyond entrusted them with.  Claimant class is potentially very large in number- in the tens of thousands potentially. Financial damages to primarily civil case Plaintiffs and law firms in this state over the past decade from tortfeasors' predatory price-gouging scheme are estimated to be over $10,000,000.00.


Dated: April 20, 2017


/s/ Seth T. Carey_____
Seth T. Carey, MBN 9970
Carey Law
Attorney for Class
114 Congress Street
P.O. Box 100
Rumford, ME 04276
364-7826