UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CAREY & ASSOCIATES, P.A., GEORGE SHAW, both as class representatives, individually, and on behalf of all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Docket No. 2:17-cv-144-NT ) |
| SHERIFFS and COUNTIES OF CUMBERLAND, et al., | ) ) ) ) |
| Defendants. | ) |

**ORDER ON THE DEFENDANTS' MOTION TO DISMISS**

The Plaintiffs' class action lawsuit centers on allegations of antitrust violations in the manner and fees associated with the service of civil process in Maine. Pursuant to Rule 12(b)(6), the Defendants have moved to dismiss all the claims in the Plaintiffs' Complaint. Defs.' Mot. to Dismiss (ECF No. 6). For the reasons discussed below, I grant the Defendants' motion to dismiss.

**FACTS**

The Complaint generally alleges that the Defendants have a monopoly in the service of civil process and are price-gouging for their services. Complaint (ECF No. 1). The Complaint includes claims for violations of: the Maine Freedom of Access Act (Count I); the Maine Unfair Trade Practices Act (Count II); the duty of good faith and fair dealing (Count III); the Maine antitrust statute (Count IV); the Sherman Antitrust Act (restraint of trade) (Count V); the Sherman Antitrust Act (exclusive

dealing and other exclusionary agreements) (Count VI); the Sherman Antitrust Act (monopoly) (Count VII); the Maine antitrust statute (Count VIII); the Clayton Antitrust Act (Count IX); the Sherman Antitrust Act (attempted monopolization) (Count X); the Federal Trade Commission Act (Count XI); civil conspiracy (Count XII); unjust enrichment (Count XIII); accounting (Count XIII); the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count XIV); and punitive conduct (Count XV). The Plaintiffs seek damages and declaratory and injunctive relief.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted." In assessing a motion to dismiss under Rule 12(b)(6), a court "assume[s] the truth of all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." *Román–Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 45 (1st Cir. 2011) (internal quotations omitted). To overcome the motion, the Plaintiffs must establish that their allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claims at issue. *Id.* at 49.

## ANALYSIS

### I. State Action Immunity

The Defendants have asserted state action immunity as a basis to dismiss the Plaintiffs' antitrust claims. The Supreme Court, relying on principles of federalism and state sovereignty, has held that the Sherman Act did not apply to anticompetitive

restraints imposed by states "as an act of government." *Parker v. Brown*, 317 U.S. 341, 352 (1943).[1]

*Parker* immunity does not apply to substate entities, such as municipalities and other political subdivisions, but "substate governmental entities do receive immunity from antitrust scrutiny when they act 'pursuant to state policy to displace competition with regulation or monopoly public service.'" *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 225-26 (2013) (quoting *Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 413 (1978)); *see also Hallie v. Eau Claire*, 471 U.S. 34, 38 (1985). "[I]mmunity will only attach to the activities of local governmental entities if they are undertaken pursuant to a 'clearly articulated and affirmatively expressed' state policy to displace competition." *Id.* at 226 (quoting *Cmty. Commc'ns Co., v. City of Boulder*, 455 U.S. 40, 52 (1982)).[2] The "clear articulation" test does not require a "state legislature to have stated explicitly that it expected [the governmental entity] to engage in conduct that would have anticompetitive effects." *Hallie*, 471 U.S. at 42. To satisfy the "clear articulation" test, the state need only delegate to the county "the express authority to take action that foreseeably will result in anticompetitive

---

[1] The state action immunity doctrine has also been applied to claims brought under the Clayton Act, *see Cine 42nd St. Theater Corp. v. Nederlander Org., Inc.*, 790 F.2d 1032 (2d Cir. 1986), and the Federal Trade Commission Act, *see N.C. State Bd. Of Dental Exam'rs v. FTC*, 135 S. Ct. 1101, 1117-1118 (2015).

[2] The Plaintiffs assert that in order to shield the anticompetitive actions of the Defendants from antitrust laws, "a State must adopt some alternative regulatory mechanism that provides active state supervision of that conduct." Pls.' Opp'n 4 (ECF No. 7). While that requirement is true for private parties asserting state action immunity, it does not apply to substate entities. "[U]nlike private parties, [substate] entities are not subject to the 'active state supervision requirement' because they have less of an incentive to pursue their own self-interest under the guise of implementing state policies." *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 226 (2013) (quoting *Hallie v. Eau Claire*, 471 U.S. 34, 46–47 (1985)).

effects." *Id.* at 43. Mere authorization to act is insufficient; "the substate governmental entity must also show that it has been delegated authority to act or regulate anticompetitively." *Phoebe Putney*, 568 U.S. at 228.

The Supreme Court has acknowledged that it would be "unrealistic" to "require state legislatures to explicitly authorize specific anticompetitive effects before state action immunity could apply" because " '[n]o legislature . . . can be expected to catalog all of the anticipated effects' of a statute delegating authority to a substate governmental entity." *Phoebe Putney*, 568 U.S. at 229 (quoting *Hallie*, 471 U.S. at 43). Instead, the Supreme Court has "approached the clear-articulation inquiry more practically, but without diluting the ultimate requirement that the State must have affirmatively contemplated the displacement of competition such that the challenged anticompetitive effects can be attributed to the 'state itself.' " *Id.* (quoting *Parker*, 317 U.S. at 352). "[A] state policy to displace federal antitrust law [is] sufficiently expressed where the displacement of competition [is] the inherent, logical, or ordinary result of the exercise of authority delegated by the state legislature." *Id.* "In that scenario, the State must have foreseen and implicitly endorsed the anticompetitive effects as consistent with its policy goals." *Id.*

### A. The Maine Statutory Scheme

Under Maine law, "[s]ervice of process shall be as proscribed by rule of court." 14 M.R.S. § 701. Rule 4(c) of the Maine Rules of Civil Procedure sets forth the requirements for service of a complaint and summons. It provides:

> (c) Service. Service of the summons and complaint may be made as follows:

4

> (1) By mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment form and a return envelope, postage prepaid addressed to the sender. If no acknowledgment of service under this paragraph is received by the sender within 20 days after the date of mailing, service of the summons and complaint shall be made under paragraph (2) or (3) of this subdivision.
>
> (2) By a sheriff or a deputy within the sheriff's county, or other person authorized by law, or by some person specially appointed by the court for that purpose. Special appointments to serve process shall be made freely when substantial savings in travel fees will result.
>
> (3) By any other method permitted or required by this rule of by statute.

Me. R. Civ. P. 4(c).[3]

By statute, "[e]very sheriff and each of his deputies shall serve and execute, within his county, all writs and precepts issued by lawful authority to him directed and committed." 14 M.R.S. § 702. Maine law provides that sheriffs and their deputies shall receive fees unless the sheriffs and deputies are paid a salary instead of the fees for service of process.

> 1. Civil process. For service of all writs or complaints with summonses, precepts, notices, executions, court orders, orders of service, copies and all other civil process or papers requiring service which are not specified in this section:
>
>> A. For proceedings in forma pauperis, $4 for each such service and $8 if the service is made in hand;
>>
>> B. For service on behalf of the State, $4 for each such service and $8 if the service is made in hand; and

---

[3] The Federal counterpart to this rule permits personal service by "[a]ny person who is at least 18 years old and not a party." Fed. R. Civ. P. 4(c)(2).

5

C. For all other proceedings, $8 for each such service and $16 if the service is made in hand.

30-A M.R.S. § 421(1). The statute goes on to identify fees for enumerated types of service. 30-A M.R.S. § 421(2)-(15). The statute further provides for reimbursement for mileage in addition to the fees. 30-A M.R.S. § 421.

### B. Anticompetitive Effects are a Foreseeable Result

Although Maine law does not grant county sheriffs exclusive authority to serve civil process, the statutory scheme demonstrates that the legislature intended county sheriffs and their deputies to play the primary role in completing personal service of civil process in Maine. The legislature's grant of broad authority to sheriffs and deputies as process servers displaces some competition. In order to have process served personally by someone other than the sheriff or his deputies, one would have to obtain a special appointment from the court or use one of a narrow class of individuals otherwise authorized by law to effectuate service. *See, e.g.*, 14 M.R.S. § 703 (service by constables). Although special appointments are to be granted liberally, the extra step creates an impediment to the use of alternate forms of personal service of process. Me. R. Civ. P. 4(c)(2).

Two other features of the Maine service statutes also support the foreseeability of an anticompetitive effect. First, the statute here not only authorizes the sheriff to effectuate personal service, it also sets the fees which can be charged. This is not a case like *FTC v. Ticor Title Ins. Co.*, where rating bureaus for title insurance companies were authorized by state statute to set fees because here the state set the fees. 504 U.S. 621 (1992); s*ee also Phoebe Putney,* 586 U.S. at 228 (broad grant of

authority to hospital authorities did not delegate authority to act anticompetitively); *Comty. Commc'ns Co.,* 455 U.S. at 52 (state's grant of broad neutral authority to municipalities to govern local affairs did not contemplate anticompetitive actions later taken by the municipality). Second, contrary to the Plaintiffs' contention, the statute is not neutral with respect to the actions challenged as anticompetitive. The statute compels sheriffs and their deputies to execute service of lawfully issued writs and precepts presented to them. The statutory language indicates that, provided payment is received, the sheriffs and their deputies "*shall* serve and execute" these documents. 14 M.R.S. § 702 (emphasis added). In *Hallie*, the Supreme Court stated that a municipality was not required to show compulsion in order to receive the benefit of state action immunity, but it acknowledged that "compulsion affirmatively expressed may be the best evidence of state policy [to displace competition]." 471 U.S. at 45-46. Thus, in this case the anticompetitive effect can be attributed to the state itself.

Because displacement of competition is the ordinary, logical, and inherent result of the Maine statutory scheme, its anticompetitive effect on personal service of process is foreseeable and the "clear articulation" test is satisfied. Thus, the sheriffs and county Defendants are entitled to state action immunity on all the Plaintiffs' federal antitrust claims. *See Fisichelli v. Town of Methuen*, 956 F.2d 12, 15-16 (1st Cir. 1992) (where immunity attaches, it shields not only the municipality as a body corporate and politic, but also municipal officials who are responsible for

7

implementation of the anticompetitive policy). This state action immunity encompasses both claims for damages and for injunctive relief.

## II. The Plaintiffs' Abandoned Claims

The Defendants raised numerous additional arguments to support the dismissal of the remaining counts of the Complaint.[4] The Plaintiffs focused their response on state action immunity. Despite filing a 23-page brief in one-and-one-half line spacing,[5] the Plaintiffs failed to respond meaningfully to any of the Defendants' arguments concerning the remaining counts.[6] I will not attempt to supply arguments that the Plaintiffs have not articulated. I find that the Plaintiffs have abandoned the remaining counts in their Complaint and have waived the right to challenge a judgment in favor of the Defendants on those claims. *Astro-Med, Inc. v. Nihon Kohden*

---

[4] The Defendants assert that: 1) state action immunity extends to claims brought under state antitrust laws; 2) all antitrust claims fail because there is no connection to commerce; 3) the breach of duty of good faith and fair dealing count fails because the UCC does not apply to contracts for services; 4) the civil conspiracy claim fails because the Plaintiffs have not alleged an independently recognized tort; 5) the unjust enrichment claim fails because the Plaintiffs have failed to allege any benefit that they conferred on any of the defendants; 6) the accounting claim is not a separate cause of action; 7) violations of antitrust laws do not constitute predicate acts under RICO; and 8) the FOAA claim is an untimely appeal of an undefined request. Because I conclude that the Plaintiffs have abandoned these counts, I do not address the merits of any of the Defendants' additional arguments.

[5] Local Rule 7(d) requires memoranda to be double spaced and provides that "no memorandum of law . . . in opposition to a motion to dismiss . . . shall exceed 20 pages."

[6] The Plaintiffs' Opposition included one paragraph addressing the intrastate commerce argument and relying on "common sense" as opposed to properly cited authority. Pls.' Opp'n 4. I am not basing my ruling on the commerce issue. Aside from that one paragraph, the sum and substance of the Plaintiffs' response to the Defendants' additional arguments is as follows:

> The rest of Defendants [sic] arguments, such as "the Plaintiffs do not allege that the Defendants committed any torts," for example, is just too derisory and contemptable [sic] to even dignify with a response. The Defendants' counsel should be subject to sanctions for their motion to dismiss which is an act of absurd and illogical.[sic]"

Pls.' Opp'n 23.

*America, Inc.*, 591 F.3d 1, 19 (1st Cir. 2009) ("[I]ssues adverted to . . . in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned."(internal quotations omitted)); *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd* 98 F. App'x 8 (D.C. Cir. 2004).

## CONCLUSION

For the reasons stated above, I **GRANT** the Defendants' motion to dismiss the Plaintiffs' Complaint.

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 5th day of March, 2018.